**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR420 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| **DANIEL SALAIS,** | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the motion to suppress by defendant Daniel Salais (Salais) (Filing No. 21). Salais is charged in the Indictment with a conspiracy to distribute and possess with intent to distribute in excess of 50 grams of methamphetamine (Count I) in violation of 21 U.S.C. § 846 and the distribution of 5 grams or more of methamphetamine (Count II) in violation of 21 U.S.C. § 841(a)(1). Salais seeks to suppress photo identifications made by two government witnesses, Ronald Warner (Warner) and Travis Andrew Ehlers (Ehlers), and to suppress any future in-court identifications by these witnesses.

The Court held an evidentiary hearing for the motion to suppress on March 22, 2006. Salais was present at the hearing along with his counsel, Hugh I. Abrahamson and Shaun F. Downey. The government was represented by Assistant U.S. Attorney Joe W. Stecher. Chandler Thompson, a certified interpreter in the Spanish language, was available as an interpreter by remote telephone hook-up. At the hearing, the Court heard the testimony of Warner and Ehlers. A transcript (TR.) was prepared and filed in this matter on March 29, 2006 (Filing No. 39). There was no post-hearing briefing.

**FINDINGS OF FACT**

Warner testified he was imprisoned for driving while intoxicated and driving under suspension in July 2005 (TR. 5-6). Warner testified he was in the Dakota County Jail for his third DUI in Dakota County and for DUS which was a felony charge (TR. 13). Warner was incarcerated for two to three weeks at the Dakota County Jail and came into contact with a person named Puppet who was also incarcerated at the Dakota County Jail (TR. 6).

Warner testified he was in the same pod (southeast) as Puppet and had daily contact with Puppet, including conversations, for approximately two weeks (TR. 6-7). Warner stated he spoke with Puppet in English and stated there were other Hispanic males in the same pod (TR. 11). However, Warner stated no one else looked like Puppet (TR. 11). About a week after Warner was released from jail, Puppet had a telephone conversation with Warner (TR. 7). As a result of the telephone call, Warner met Puppet at the Heritage Express gas station near Atokad in South Sioux City, Nebraska (TR. 8). That meeting dealt with drugs (TR. 8). Following the meeting with Puppet, Warner informed Investigator Terry Kenny (Investigator Kenny) of the Nebraska State Patrol (NSP) about the meeting with Puppet (TR. 8). Investigator Kenny showed Warner a single picture of Salais and asked if that was the person named Puppet who Warner was talking about (TR. 9). Warner stated that it was (TR. 9). Warner did not know Puppet by any other name until he was shown a picture of Salais by Investigator Kenny (TR. 19). Warner also testified that after he met with Salais at the gas station, Warner purchased some drugs from Salais several months later (TR. 15-16). This drug transaction took place at Salais's house when other parties were present (TR. 17-18). Warner also identified Salais in the courtroom as being Puppet (TR. 9).

Ehlers testified he became acquainted with Puppet in September or October of 2005 (TR. 27). Ehlers, who lived in the Dakota County area all his life, met Puppet at a friend's house (TR. 28). Ehlers testified he bought drugs from Puppet three or four times a week after Ehlers first met Puppet (TR. 28). Ehlers testified he purchased about a half an ounce of methamphetamine from Puppet each time (TR. 29). The purchases took place at a trailer park behind the Atokad lounge in South Sioux City (TR. 29). Ehlers testified he would telephone Puppet to make the buys (TR. 30). This relationship lasted for six to eight weeks (TR. 30). Ehlers testified that, on November 5, 2005, he was pulled over by the police within minutes of leaving the company of Puppet (TR. 30). Ehlers was arrested and was contacted by Investigator Kenny about a half-hour later (TR. 31). Ehlers was shown one photograph which he identified as Puppet (TR. 31; 36-37). The photograph was that of Salais whom Ehlers also identified in the courtroom as Puppet (TR. 31). Ehlers testified he was a methamphetamine user and was charged with a felony as a result of his arrest on November 5, 2005 (TR. 34). Ehlers testified he is due in Court May 10th, and he hopes

to get probation even though he had no deal for his testifying in this case at this time (TR. 34-35).

## LEGAL ANALYSIS

Salais seeks to suppress the photographic identifications by Warner and Ehlers as being unduly suggestive and violative of Salais's due process rights under the Fifth Amendment. Further, Salais seeks to suppress any future identifications by Warner and Ehlers as unreliable as being the product of a suggestive show-up resulting in a likelihood of misidentification.

The Supreme Court has long recognized that the Due Process clause affords a defendant the right to suppress identification testimony which is not trustworthy. ***Stovall v. Denno***, 388 U.S. 293, 302 (1967). The Eighth Circuit has held:

> To test the reliability of identification procedures, we apply the two-part test adopted by the Supreme Court in ***Manson v. Brathwaite***, 432 U.S. 98 (1977). ***United States v. Murdock***, 928 F.2d 293, 297 (8th Cir. 1991). First, we consider whether the identification procedures were impermissibly suggestive. ***Id.*** Second, if the procedures were impermissibly suggestive, we look to the totality of the circumstances to determine whether "the suggestive procedures created 'a very substantial likelihood of irreparable misidentification.'" ***Id.*** (**quoting *Manson***, 432 U.S. at 116).

***United States v, Johnson***, 56 F.3d 947, 953 (8th Cir. 1995). "In determining whether the identification procedure was impermissibly suggestive, defendant bears the burden of proof by a preponderance of the evidence." ***United States v. Roberts***, 928 F. Supp. 910, 927 (W.D. Mo. 1996) (**citing *United States v. Wade***, 388 U.S. 218 (1967)). One person show-ups, as what happened is this case with Warner and Ehlers, sustains the defendant's burden to show that an identification procedure was impermissibly suggestive.

However, even though the show-up of Salais was impermissibly suggestive, the court finds that any suggestiveness did not create a very substantial likelihood of irreparable misidentification. In determining whether an impermissibly suggestive confrontation creates a very substantial likelihood of irreparable misidentification, the court must weigh five key factors:

1. The witness's opportunity to view the criminal;
2. The witness's degree of attention;
3. The accuracy of the witness's prior description of the defendant;
4. The witness's level of certainty when identifying the suspect at the confrontation; and
5. The length of time which has elapsed between the crime and the confrontation.

*Roberts*, 928 F. Supp. at 927 (**citing** *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *United States v. Rundell*, 858 F.2d 425, 426-27 (8th Cir. 1988); *Hulsey v. Sargent*, 821 F.2d 469, 473 n.5 (8th Cir. 1987)).

In the present case, Warner and Ehlers had ample opportunity to observe Salais before the one-person photographic show-ups. Both had extensive personal dealings with Salais who was known to them as Puppet. Both were certain in their identifications. There has been little time which has elapsed since each of the witnesses had dealt with Salais. Warner shared the same jail pod with Salais for several weeks and thereafter was contacted by Salais to engage in various drug transactions. Ehlers had purchased methamphetamine from Salais over a six to eight week period in 2005-2006. While neither witness was asked for a description of Salais since the identification was simply a matter of determining if Salais was the person known as Puppet to each of the witnesses, the court finds that, given the totality of the circumstances and assuming, *arguendo*, the show-up was suggestive, the show-up did not taint the witnesses' identification of Salais to the degree that there is any likelihood of an irreparable misidentification. **See** *United States v. Martin,* 391 F.3d 949, 952 (8th Cir. 2004); *United States v. Hadley*, 671 F.2d 1112 (8th Cir. 1982); **see also** *Clark v. Caspari*, 274 F.3d 507 (8th Cir. 2001); *United States v. Woody*, 690 F.2d 678 (8th Cir. 1982).

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Daniel Salais's Motion to Suppress (Filing No. 21) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 3rd day of April, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge